[Cite as *State v. Horne*, 2017-Ohio-7539.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                              :
                                                                CASE NO.  CA2016-10-071
    Plaintiff-Appellee,               :
                                                                O P I N I O N
                                           :                      9/11/2017
  - vs -
                                           :

JAYME E. HORNE,                            :

    Defendant-Appellant.           :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016-CR-00407


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant


    **M. POWELL, J.**

    {¶ 1}  Defendant-appellant, Jayme E. Horne, appeals her convictions in the Clermont County Court of Common Pleas for burglary.

    {¶ 2}  On July 19, 2016, the Clermont County Grand Jury returned an indictment charging Horne with two counts of burglary in violation of R.C. 2911.12(A)(2), both second-degree felonies.  The matter proceeded to a two-day jury trial that concluded on August 31,

2016. The state presented several witnesses and exhibits, which revealed the following facts.

{¶ 3} Rosemary and Frank Klaas live in a ranch-style home in Clermont County, Ohio. Horne's mother, Ella Rideout, lives at the residence located next door. In the fall of 2014, Horne moved into her mother's home. Rosemary testified Horne and other Rideout household members would often visit the Klaas' home to borrow "money, cigarettes, [and] stuff like that." Rosemary further stated Horne was familiar with where Rosemary's purse and Frank's wallet were kept in their home. The Klaas' home has a front porch with a small window leading into the living room. The Klaases routinely left the window ajar to permit their cat ingress and egress to their home.

{¶ 4} Between November and December 2015, Rosemary began noticing money missing from her purse. She contacted the police regarding the missing money in February or March 2016. Later in the spring of 2016, while Horne visited the Klaas' home, Rosemary pretended to be asleep and observed Horne reach into her purse, prompting Rosemary to order Horne out of her home. Shortly thereafter, Rosemary again discovered money missing from her purse, and had a conversation with Ella regarding the missing money. Approximately an hour after this conversation, Horne gave Rosemary $110 and informed her she would "pay her back." However, Rosemary again discovered money missing from her purse, including the $110 provided by Horne.

{¶ 5} Due to the continuing instances of money missing from her purse, in June 2016, Rosemary's son installed a video surveillance system in the residence. On June 27, 2016, Rosemary discovered money missing from her purse. Rosemary reviewed the surveillance video, which depicted an individual approaching the Klaas' home from the direction of Horne's bedroom next door. The individual entered the home through the small porch window, used a cell phone as a flashlight, searched around the couch and floor where

Frank's wallet and Rosemary's purse were often stored, and then exited through the same window.

{¶ 6} Based upon the individual's size, movements, and clothing, Rosemary identified Horne as the intruder. Rosemary reviewed prior video surveillance footage and discovered another intrusion on June 21, 2016 perpetrated by the same person, also identified by Rosemary as Horne. Frank also identified the intruder as Horne in both instances because he had seen Horne wearing the same clothing on a prior occasion.

{¶ 7} Rosemary contacted the Union Township Police Department and Detectives Hines and Pavia responded. Hines reviewed the surveillance footage provided by Rosemary and noted the intruder's clothing and a small dark spot on the intruder's foot. Hines stated the intruder's jacket appeared to be zipped all the way up and had a dangling pendant on the zipper. Based upon this information, Police later obtained and executed a search warrant on Horne's home. In Horne's bedroom, Police recovered a syringe, along with clothing and a cell phone matching the clothing worn and cell phone used by the intruder. During execution of the warrant, Hines observed a tattoo on Horne's left foot and several track marks on her arm.

{¶ 8} Before trial, the state filed a notice of intent to introduce "other acts" evidence. The state intended to introduce evidence of Rosemary observing Horne reaching into her purse while Rosemary pretended to be asleep and Horne's subsequent offer to repay Rosemary. Additionally, the state intended to introduce evidence of the syringe recovered from Horne's bedroom and the track marks Hines observed on Horne's arm to establish that Horne was a drug user or addict; thus, providing a financial motive for burglarizing the Klaas' home. The trial court conducted a hearing on the matter and indicated an intent to permit the state to introduce such evidence, while reserving a final ruling on the matter until the state sought introduction at trial. The trial court set forth a procedure for the parties to follow at trial

so that the trial court could make a final ruling without the jury being otherwise aware of the "other acts" evidence. Accordingly, the trial court prohibited the parties from mentioning the "other acts" evidence in voir dire or opening statements. The trial court admitted the "other acts" evidence at trial over defense counsel's objections and provided limiting instructions before its admission and during final jury instructions.

{¶ 9} Following deliberations, the jury returned a verdict of guilty on both burglary charges. The trial court then sentenced Horne to an aggregate seven-year prison term. Horne now appeals from her convictions, raising two assignments of error relating to the trial court's admission of the "other acts" evidence.

{¶ 10} Assignment of Error No.1:

{¶ 11} THE TRIAL COURT ERRED IN ADMITTING DRUG EVIDENCE UNDER EVID.R. 404(B).

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE TRIAL COURT ERRED IN ADMITTING "OTHER ACT" EVIDENCE UNDER EVID.R. 404(B).

{¶ 14} Horne contends the trial court abused its discretion by permitting the introduction of evidence regarding the track marks observed on her arm and the syringe found in her bedroom. In so doing, Horne argues the evidence concerning her drug use failed to meet the requirements for admission as "other acts" evidence demonstrating motive because it was irrelevant and its probative value was substantially outweighed by the danger of unfair prejudice. Likewise, Horne contends the trial court abused its discretion by permitting Rosemary to testify regarding the incident where Rosemary pretended to be asleep and caught Horne reaching into her purse. Horne argues Rosemary's testimony was irrelevant evidence presented to show she acted in conformity with her bad character as a thief, and that its probative value was substantially outweighed by its danger of unfair

- 4 -

prejudice.

{¶ 15} "A trial court has broad discretion in the admission and the exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9, citing *State v. Finnerty*, 45 Ohio St.3d 104, 109 (1989). An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 16} "'Evidence that an accused committed a crime other than the one for which he [or she] is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character.'" *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 19, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. However, the Ohio Supreme Court has promulgated certain exceptions to the common law regarding the admission of "other acts" evidence. Those exceptions are contained in Evid.R. 404(B), which states:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Furthermore, for evidence to be admissible pursuant to Evid.R. 404(B), there must be substantial proof the alleged other acts were committed by the defendant and the evidence must tend to prove one of the enumerated exceptions. *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994); *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 37.

"Substantial proof" is not proof "beyond a reasonable doubt." *Jones* at ¶ 37. Additionally, R.C. 2945.59 provides that

> [i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 17} The Ohio Supreme Court in *Williams* outlined a three-part test for courts to apply when considering the admissibility of other acts evidence. *Williams* at ¶ 19-20. First, the court should "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, the court should determine if "evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the court should "consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

{¶ 18} The trial court admitted evidence regarding Horne's drug use pursuant to Evid.R. 404(B) as probative of her motive for committing the charged offenses. Horne contends this evidence was irrelevant and highly prejudicial. In so doing, Horne acknowledges that the state offered the drug use evidence to demonstrate her motive for committing the burglaries was to steal money from the Klaases. However, Horne claims the drug use evidence was not relevant to an alleged motive to commit the burglaries, while conceding it may have been relevant to an alleged motive to commit the underlying thefts.

Horne argues that, as she was not charged with theft, the evidence was irrelevant and introduced solely for characterizing her as a drug addict to inflame the emotions and prejudice of the jurors against her. Therefore, Horne's argument draws a distinction between a motive for theft and a motive for burglary with the purpose to commit theft.

{¶ 19} Contrary to Horne's claim otherwise, "evidence of drug addiction or abuse is admissible under Evid.R. 404(B) if relevant to a noncharacter issue, such as a possible motive to steal." *State v. Parsons*, 10th Dist. Franklin No. 06AP-410, 2007-Ohio-1204, ¶ 13, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 161 (2001). Horne correctly asserts the crime of burglary does not require the state to prove the defendant completed the underlying offense, only that the defendant trespassed with the purpose to commit a criminal offense. R.C. 2911.12(A). However, where the object of a burglary is to facilitate a theft, the motive for the theft and the motive for the burglary are identical. As discussed further below, the state presented substantial evidence that Horne trespassed with the purpose to commit a theft. Moreover, Horne's alleged drug use was probative of her possible motive to commit the theft, and therefore, to commit the burglary.

{¶ 20} Any resulting unfair prejudice from the trial court admitting the drug use evidence does not substantially outweigh its probative value in demonstrating Horne's motive for committing the charged offenses. *State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 73-74 (finding probative value of drug use evidence outweighed any prejudicial impact). Even if we deemed the evidence improper, any error would be harmless because the state presented overwhelming evidence of Horne's guilt. *See, e.g.*, *Tibbetts* at 161; *Parsons* at ¶ 13. Moreover, the trial court provided a limiting instruction both before the admission of the evidence and during final jury instructions. *State v. Mills*, 12th Dist. Clermont No. CA2015-12-101, 2016-Ohio-6985, ¶ 18 (stating trial court minimalizes potential prejudice by providing limiting instructions before testimony and again before submitting the

- 7 -

case to the jury). There is a presumption "that the jury has followed the instructions given to it by the trial court." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 194. The record in this case does not reflect any indication that the jury did not follow the trial court's instructions. Therefore, the trial court did not err by admitting the drug use evidence.

{¶ 21} Next, Horne contends the trial court erred by permitting Rosemary to testify regarding Horne reaching into Rosemary's purse because the testimony fails all three prongs of the *Williams* test. *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695 at ¶ 19-20. Horne asserts "[t]he identity of the suspect was the only 'fact of consequence' in this case." Horne further asserts the evidence regarding Horne reaching into Rosemary's purse is irrelevant because it does not aid the trier of fact in determining the identity of the suspect because the incident was an impulsive decision and does not make the conclusion that Horne was the burglar any more probable.

{¶ 22} Contrary to Horne's argument, the trial court did not err by finding the evidence relevant to the burglar's identity and tending to demonstrate a similar modus operandi as the burglar. Other acts evidence is admissible "to establish the identity of a perpetrator by showing that he [or she] has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 45. The other acts "must be related to and share common features with the crime in question." *Id.* at ¶ 34. The state concedes Horne reaching into Rosemary's purse while Rosemary was pretending to be asleep does not *exactly* mirror the circumstances of the two burglaries. However, the state asserts the trial court did not err in finding the circumstances shared common features and were sufficiently related to the burglaries to be relevant in identifying the burglar and her modus operandi.

{¶ 23} The state presented evidence Horne often visited the Klaas' residence to

borrow money, and was therefore, aware of where Rosemary kept her purse. The surveillance video twice depicted what appeared to be a female comparable in size to Horne approach the front window from near Horne's bedroom, crawl through the window, and head directly towards the typical storage areas for Frank's wallet and Rosemary's purse. The burglar ignored searching any other areas of the residence, removed money from Rosemary's purse, and then left the residence through the same window. Considering the evidence presented regarding the burglar's method of theft, Rosemary's testimony regarding Horne reaching into her purse tends to identify Horne as the burglar as well as correlates to the particular method by which Horne committed the burglaries.

{¶ 24} Thus, the state did not present the evidence to demonstrate Horne acted in conformity with her prior action reaching into the purse, but rather, it was probative of her method for stealing money from the Klaases by searching only the areas where she was aware the wallet and purse were often stored. The fact that the evidence was unfavorable to Horne does not equate to a finding the evidence was unfairly prejudicial. Rather, the risk of unfair prejudice which might result in an improper bias for a jury decision must substantially outweigh its probative value. *State v. Bowman*, 144 Ohio App.3d 179, 185 (12th Dist.2001), citing *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001). As discussed above, the evidence was probative of the identity of the burglar and the burglar's modus operandi. Moreover, any prejudicial impact was lessened by the trial court providing two limiting instructions, both before the introduction of the evidence and during final jury instructions. Therefore, the trial court did not abuse its discretion by admitting such evidence.

{¶ 25} Accordingly, Horne's first and second assignments of error are overruled.

{¶ 26} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.